Totten, J.,
delivered the opinion of the court.
This action, instituted in the circuit court of Weakley, is trover for the conversion of a negro slave; the defendant’s plea is not guilty; and at February term, 1852, of said court, there was judgment for the defendant, from which the plaintiffs have appealed in error to this court.
The case as it appears in the bill of exceptions, is this :— Gardner, a constable of Weakley, had in his hands an execution issued by a justice, against R. J. Moss for $125 00; he went to the house of the debtor to levy it, and by his consent levied the execution on the slave in question, the slave being present and in view of the constable. lie thereon left the slave in the debtor’s possession, at his request, and he, the debtor, went to the creditor to get his permission, as he said, to stay the judgment on which the execution was issued. This levy was on 6th June, 1848; the slave remained at the debt- or’s until the 9th June, when it was removed by the constable, and on the 30th June sold by him, in virtue of said execution, *428 to one Brasfield, who sold the same to Edwards, the defendant.
On the 7th June, the day after the levy, the said debtor executed to the plaintiffs a deed of assignment for said slave and other property, to secure the payment of bona fide debts, named in the assignment. It was duly registered on the same day. The deed and the execution with the levy and sale endorsed thereon, were produced in evidence at the trial; and a paper purporting to be a copy from the justice’s docket, was also produced in evidence and relied upon as a judgment.
It will be seen that the plaintiff’s title depends upon the deed of assignment, and as to that, no objection can be made for want of formal execution or for fraud or other cause, so far as anything appears in the case. But the objection is that it was inoperative as to the slave in question, because the vendor, the common debtor of these parties, had not at the time the deed was executed, any title or interest in the slave, subject to his conveyance; his title and interest therein being-vested, sub modo, in virtue of his levy under the execution. The case depends, therefore, upon the validity of the execution sale, under which the defendant claims title.
Several objections have been made :
First. It is said that the levy was invalid, because the officer did not take the slave into his possession.
We see no objection to the levy. The slave was present, in view and under the control of the officer, at the time it was made, and it was made with the knowledge and acquiescence of the debtor. No resistance was offered to his right of possession and control over the property; but after the levy it was permitted to remain with the debtor by the officer’s approval and consent.
In such case, it must be considered that the officer had at the time both the legal aud actual possession, in virtue of his levy under the execution, and that he was bound to the cred *429 itor for the value of the property, to the same extent as if it had been removed.
In the next place it is insisted, that the levy, if any were made, was abandoned by the officer, and that any claim under it was fraudulent and void, as to other creditors and purchasers of the debtor; because the property was not removed, but permitted to remain in possession of the debtor. Cases are referred to in support of this position, in which the rule is stated to be, “ that if a creditor seize the goods of a debtor, on an execution, and suffer them to remain in his hands, the execution is deemed fraudulent and void, as against a subsequent execution.” Whipple vs. Foot, 2 Johns. R. 420 ; Stone vs. Woods, 11 Johns. R. 110 ; Roberts vs. Seals, Ind. Law R. 88. And it is said that this rule has long been established in the English courts and is founded upon reasons best calculated to prevent fraud.
But the New York cases have been reviewed and the doctrine they maintain materially modified in more recent cases in that State. Reto vs. Barber, 3 Cowen R. 278; Russell vs. Gibbs, 5 Cowen R. 390. We do not deem it necessary to go fully into the cases on this subject, but are of opinion that the mere fact that goods taken in execution are permitted to remain in possession of the debtor until sale will not vitiate the levy or render the goods liable to a subsequent execution or sale. But if the goods are permitted to remain in the debtor’s possession for an unreasonable length of time, or if the creditor, desiring to favor the debtor, instruct the officer to delay and not to proceed with the execution, the goods remaining in the debtor’s possession and use, the execution would be deemed fraudulent as to creditors and purchasers. See 5 Cowen R. 278; 5 Cowen R. 390, and the English and American cases there collected.
Certainly the usual and better course is, that the officer levying the execution take the goods into his possession and *430 retain them until sale, if no delivery bond, as in our practice, be given.
In the present case the possession was permitted to remain with the debtor for a few days only, to enable him to make the effort to procure indulgence from the creditor; nor did the creditor concur in the act, which, according to many of the cases, is a material circumstance. Certainly, there was no intention to abandon the levy.
bn the last place, it is insisted by the plaintiffs that no valid judgment was produced by defendant, and that it was necessary in order to show title under the execution.
The paper referred to and relied upon as a judgment, is so vague and imperfect that we can only regard it as a mere nullity.
It was necessary that defendant prove a judgment, in order to make out his title. This is the rule in regard to real property, and we see no reason why it should not apply to personal property likewise.
It is true, thát if the-oificer were sued by the defendant in the executioner by a purchaser under him after the levy, or by a mere stranger 'having¡no color of title, he need not show a judgment, but'may justify under his execution and levy, if it be regular and valid upon'its face, and the court having jurisdiction of the subject matter.
This, however, is a mere personal exemption, intended for the protection of a ministerial officer, who is bound to execute the writ, without enquiry after the judgment.
Thus, in Cotes vs. Mitchell, 14 Petersd. Ab. 610, which was trespass against the officer and the plaintiff in a writ of possession; it was held, that the officer might justify under the writ, but that the other defendant must also produce the judgment. The same principle will be seen in many other cases. Philips vs. Biron, Stra. 509; Yates vs. St. John, 12 Wend. 74 ; Parker vs. Walrod, 16 Wend, 514.
*431 For this error, therefore, the judgment will be reversed and the cause remanded for a new trial.