**William J. KELTON,
Plaintiff/Appellant,**

v.

**Robert VANDERVORT, Deputy Sheriff of Rutherford County, Tennessee, and Charlie Sharp, Deputy Sheriff of Rutherford County, Tennessee, in their official capacity and individually, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 27, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Mar. 24, 1986.

Lionel R. Barrett, Jr., Nashville, for plaintiff/appellant.

Douglas A. Brace, Ortale, Kelley, Herbert & Crawford, Nashville, for defendants/appellees.

OPINION

TODD, Presiding Judge, Middle Section.

The plaintiff, William J. Kelton, has appealed from a summary judgment dismissing his suit against Robert Vandervort and Charlie Sharp, individually and as deputy sheriffs of Rutherford County.

The single issue presented by appellant is the correctness of the summary judgment.

The complaint alleges that plaintiff's home was sold by defendants "*prior* to an order by the Chancery Court of Rutherford County" to satisfy a debt due Murfreesboro Production Credit Association; that a decree was entered on June 26, 1981, confirming the sale; that, on July 2, 1981, a writ of possession was issued by the Court and served by the defendants by which means the purchasers at the sale were placed in possession and plaintiff's belongings were removed from the premises.

The complaint further alleges that said action was taken by the defendants despite the delivery to them of a copy of an order of this Court "setting aside the writ of possession" and that plaintiff suffered property damage, expenses and mental distress as a result of his eviction from his home.

The answer admits the Chancery Sale, the confirmation of same, the issuance and service of the writ of possession, and the issuance of a stay order by this Court; however, the answer asserts that the sale was confirmed on June 19, 1981, that the eviction took place at 9:45 a.m. on July 2, 1985, that the stay order was issued by this Court at 12:00 noon on July 2, 1981, and that defendants did not receive notice of the stay order until 1:34 p.m. on the same date.

The answer further asserts the defense of immunity under T.C.A. § 29–20–201 *et seq.*, lack of timely notice required by T.C.A. §§ 29–20–301 and 302, and that the

complaint fails to state a cause of action for which relief can be granted.

Defendants moved for summary judgment on three grounds:

(1) Provisions of T.C.A. §§ 29–20–201 and 205,

(2) "Quasi judicial immunity, and

(3) No evidence of negligence of defendants.

The affidavit of Robert Vandervort states that the writ of possession was completely executed prior to and at 9:45 a.m. on July 2, 1981, but that he and Charlie Sharp remained on the premises thereafter to insure that the peace was not breached; that a window was damaged during the removal of plaintiff's belongings, but none of plaintiff's belongings were damaged; that all removal of plaintiff's belongings was performed by the purchasers and their agents and that neither defendant performed any of the activity of removal; that defendants were notified of the stay order at about 1:30 p.m.; that plaintiff arrived at the premises at about 2:00 p.m., was told that he could stay as long as he behaved; but that plaintiff left the premises shortly thereafter.

The affidavit of Charlie Sharp adopts that of Robert Vandervort.

The affidavit of Allen Gamble, Jr., (purchaser of the house) states that the writ was executed and he was placed in possession of the house at 9:00 a.m., that plaintiff arrived at the house shortly after noon stating that he had a stay order from the Court of Appeals, and that defendants did not participate in the removal of personalty from the premises.

The affidavit of John Gamble generally corroborates that of Allen Gamble, Jr.

In an unsworn response to a request for admissions, plaintiff's counsel stated that plaintiff arrived on the premises at about 1:00 p.m. on July 2, 1981, and saw defendants assisting in removal of his belongings.

The affidavits of Phillip and Jimmy McClanahan state that all of the plaintiff's personalty was removed before the arrival of plaintiff, and that defendants did not participate in the removal.

The affidavit of Mrs. Mary Marlin contains no material evidence.

The affidavit of William Kelton states that he arrived at the premises on July 2, 1981, at about 12:30 p.m.; that he informed defendant Vandervort of the stay order and placed a copy of it in his pocket; that Vandervort stated that he had no intention of paying any attention to the stay order and refused to stop the removing of possessions from the home. The affidavit does not overtly state that either defendant handled any of his possessions, but states:

> I saw Deputy Sharpe assisting Deputy Vandervort.
>
> Deputy Vandervort and Deputy Sharpe deliberately ignored the order of Judge Todd and continued in their actions of evicting me from my home even after they were aware of the order.

The affidavit of plaintiff's wife corroborates his affidavit.

The affidavit of Stella Rooker corroborates part of plaintiff's affidavit and states:

> The deputy kept assisting the Gambles even after he had received the paper.

The summary judgment states the following ground therefor:

> The Court finds that the Defendants executed the Writ of Possession on July 2, 1981 at 9:45 A.M. and that the Defendants remaining at the premises thereafter for a period of time did not create a cause of action.

It is uncontradicted that the defendants executed the writ by reading the same on the premises and placing the purchaser in possession, all before the issuance of the stay order by this Court.

Appellee's brief states:

> Immediately upon being notified of the stay order issued by the Court of Appeals, the Plaintiff was allowed to reassume possession of his property.

The evidence on this subject is contradicted.

It is also noted that there is controverted evidence regarding the activity of defendants in the handling of plaintiff's possessions after notice of the stay order of this Court. This activity would not be within the official duty of defendants in execution of the writ, but would involve their personal liability for voluntary individual activity if negligent. While there is some evidence of the activity, there is no evidence that plaintiff suffered any injury or damage from any negligence of defendants in carrying on such activity.

Even though the defendants may have actually handled some of plaintiff's belongings, it would be necessary for plaintiff to offer some evidence that the articles handled by plaintiff were damaged.

It appears from the affidavits that plaintiff concedes that defendants arrived on the premises and served the writ prior to the issuance of the stay by this Court. Plaintiff's complaint appears to be that, upon receiving notice of the stay, defendants failed to "undo that which had been done" by evicting the purchaser from the premises, restoring plaintiff to possession and replacing his belongings on the premises.

■ No authority is cited or known to this Court which holds that a stay order is tantamount to a mandamus to restore a former status or condition. The office of a stay order is to preserve the matter in dispute in the status existing at the time of notice of the stay, and not to restore a former status.

The order issued by this Court states: It is further ordered that the issuance and/or execution of any writ of possession to enforce said decree of June 19, 1981, be and the same is/are stayed until after the expiration of thirty (30) days from and after June 19, 1985.

At the time the foregoing order was entered, the issuance and execution of the writ had already taken place.

■ It appears that appellant conceives that the execution of a writ of possession consists of the removal of the personalty of the defendant off the subject premises and that, since such removal had not been completed at the time of the notice of stay, the removal should have been interrupted upon notice of the stay. This Court does not agree. A writ of possession for realty does not constitute the sheriff a furniture mover. The writ has been obeyed when the person or persons designated by the writ have been placed in peaceful possession of the premises. The disposition of personalty found on the premises is not the duty of the officer.

■ The function of an injunction is to afford preventative relief, not to redress wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into the possession of another. *Growers Warehousing Corp. v. W.E. Sawyer Tobacco Co.,* 5 Tenn.App. 619 (1927).

■ So far as this record shows, the writ executed by the defendants was valid on its face. It was therefore a complete protection to defendants. State to use of *Grigsby v. Manly,* 79 Tenn. (11 Lea.) 636, (1883). *Harris v. Dobson Tankard Co.,* 41 Tenn. App. 642, 298 S.W.2d 28 (1957).

■ As stated above, the contraverted evidence of the individual actions of defendants in allegedly handling some of plaintiff's property is immaterial because there is no showing that defendants damaged any of plaintiff's property.

There is no genuine issue as to any material fact. Defendants are entitled to judgment as a matter of law.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.